## THE GENEVA.

(District Court, S. D. Florida. December 12, 1925.)

No. 1560.

1. Shipping ⚍49(2)—Charter party providing for 530 to 600 metric tons does not require payment of freight on 600 tons.

Charter party providing for whole vessel, or sufficient room for cargo of 530 to 600 metric tons, does not obligate charterer to pay freight on 600 tons, where only 537 tons were shipped.

2. Shipping ⚍53—Leaving forward hatch open held not such negligence as would make vessel liable for increase of moisture in goat manure.

Leaving a forward hatch open for air, with no showing of extraordinary weather on voyage, held not sufficient fault or negligence to make vessel responsible for loss, if any, suffered by reason of increase in moisture in cargo of goat manure.

3. Shipping ⚍49(3)—Freight charge reduced in amount that weight of cargo was increased by moisture.

Where cargo of goat manure as delivered weighed 7 tons more than minimum required under charter party, increase of moisture in cargo during voyage held to show cargo loaded was less than minimum; hence freight paid on seven tons will be deducted.

In Admiralty. Libel by the Holland Import & Export Company, of Jacksonville, Fla., against the ship Geneva. Decree for libelant.

Martin H. Long, of Jacksonville, Fla., for libelant.

Knight & Adair, of Jacksonville, Fla., for respondent.

CALL, District Judge. This cause comes on for hearing upon the libel and amendments thereto, the answers of claimants, and the testimony taken. The libel claims $225 freight money overpaid on 600 tons of cargo, when only 537 tons were delivered, and also the value of the 63 tons not delivered, valued at $630.

Subsequently two amendments to the libel were filed, one on May 15, 1922, claiming an additional sum of $412.50, because of the increase of the percentage of moisture in the cargo (goat manure) delivered over that contained when received aboard the vessel, and the other on July 22, 1922, enlarging the claim made in the first amendment by alleging that the moisture should have decreased on the voyage.

The claimants answered the libel, admitting the allegations of the libel of the charter party, the issuing of the bill of lading, and payment of freight on 600 tons, and claiming that it was entitled to receive this amount in any event, under the charter party; that the full cargo received was delivered in as good condition as received. It denies the allegation of the value of the 63 tons, which checked out short.

On August 1, 1922, an answer was filed to the amendments, denying the allegations of the amendments, and alleging the use of due diligence to make the vessel seaworthy, the proper stowage of the cargo, proper care of same on the voyage, and that any damage to same on the voyage was occasioned by causes excepted in the charter party.

[1] It is admitted by each of the parties hereto that, if the charter party provides for a minimum cargo, the vessel is entitled to the freight on this minimum, whether furnished by the charterer or not. Therefore the first question made by the pleadings is as to the character of the charter party in this case. The charter party in this case provides for the whole vessel, "or sufficient room for cargo hereinafter mentioned, * * * for a voyage from Aruba, W. I., to Jacksonville, Fla., U. S. A., * * * 530 to 600 metric tons of goat manure." The freight agreed to be paid is $4.50 "per each and every ton." The question is: Does this language obligate the libelant to pay freight on 600 tons, whether that amount was received at Aruba or not? I do not think so. Under the terms of the charter party, I think the charterer had the option to load 530 tons and up to 600 tons, and must pay freight on 530 tons in any event, and on all tonnage in excess of 530 tons loaded, at the agreed rate per ton,

on delivery to them at the port of receipt. In this case the testimony shows the receipt of only 537 tons at the port of delivery, and on that amount the vessel was entitled to the freight at the agreed rate per ton. I therefore find from the testimony that the libelant is entitled to recover from the vessel the freight paid on 63 tons, not delivered, at the rate of $4.50 per ton.

[2, 3] Coming to the other claim propounded in the amendment to the libel, the analysis of the manure at the point of shipment shows a moisture of 23.5 per cent. The analysis at the port of Jacksonville shows 38.30 per cent. on April 8th and 39.90 per cent. on April 11th. No explanation is offered for the increase of more than 1 per cent. in moisture from April 8th to April 11th. The testimony would indicate that the manure was in rather a wet condition when received here. It is true that the testimony shows that the samples examined at Curacao were sent by sail boat from Aruba; but this does not help the respondents, as a second sample examined at Curacao showed less moisture. Taking all the testimony in consideration, I do not find that the libelant has suffered any damage that it can recover in this action. The testimony shows that a compromise was had between it and the seller of the manure on account of the excess of moisture at the point of shipment, and is not sufficient upon which to base a finding by the court of the amount of damage, if any, suffered by it by reason of the increase of the percentage of moisture between the loading of the vessel and delivery at Jacksonville, except to decrease the weight of the cargo loaded at Aruba. There appears to have been an increase of percentage of moisture from 23.5 per cent. to 38.30 per cent. thus showing an increase of 14.8 per cent. There were 537 tons delivered; seven tons over the minimum amount of freightage.

Considering the 14.8 per cent. increase of moisture, it would show that the amount of cargo received at Aruba by the vessel was that much less than when delivered at Jacksonville. But the vessel would have been entitled to receive freight on 530 tons, under the charter party, so that the libelant should recover from the vessel, in addition to the freight paid on the 63 tons, the further amount paid on the 7 tons at the contract rate. The testimony is not sufficient for me to say that the vessel was not seaworthy. The leaving of the forward hatch open for air, with no showing of extraordinary weather encountered on the voyage, is not

such fault or negligence as in my judgment would make the vessel responsible for the loss, if any, suffered by libelant by reason of the increase in moisture. But, finding, as I do, that there was this increase during the voyage, it shows a less weight loaded at Aruba than was shown in delivery, and for that reason the freight paid upon the 7 tons has been allowed the libelant.

A decree will be entered accordingly.